# EXHIBIT B

Filed 7/18/2023 5:32 PM
Kendra Popp-Charbula
District Clerk
Wharton County, Texas

Meagan Morales

**CAUSE NO. CV52583**

| | | |
|---|---|---|
| **IN RE: SYNGENTA PRODUCTS LIABILITY LITIGATION** | § § § § § | **IN THE DISTRICT COURT OF** |
| | § | **WHARTON COUNTY, TEXAS** |
| | § § | **23RD JUDICIAL DISTRICT** |
| **CLAYTON CLARK, CLARK, LOVE & HUTSON, GP, CLARK, LOVE & HUTSON, PLLC, PETER FLOWERS, AND MEYERS & FLOWERS, LLC,** | § § § § § § § | |
| *Counterclaim-Plaintiffs* | § § | |
| **v.** | § § | |
| **EMPLOYEE FUNDING OF AMERICA, LLC,** | § § | |
| *Counterclaim-Defendant* | § | |

**COUNTERCLAIM AGAINST
INTERVENOR EMPLOYEE FUNDING OF AMERICA, LLC**

COME NOW Counterclaim-Plaintiffs, Clayton Clark, Clark, Love & Hutson, GP, and

Clark, Love & Hutson, PLLC (hereinafter collectively "Clark"), and Peter Flowers and Meyers

& Flowers, LLC (hereinafter collectively "Flowers"), and for their Counterclaim against

Intervenor and Counterclaim-Defendant Employee Funding of America, LLC (hereinafter

"EFOA"), state as follows:

**INTRODUCTION**

Intervenor and Counterclaim-Defendant EFOA made a bad loan to Martin Phipps

("Phipps") and his law firms. Despite knowing the loan was risky from the outset, EFOA hoped

to obtain a quick, substantial return on investment. Consequently, EFOA negligently issued the

loan, procuring in exchange an exorbitant interest rate (one exceeding 20% interest per annum)

and a pledge of the Phipps-Debtors'[1] personal assets to secure the loan. Subsequently having learned Phipps pledged illusory assets to secure the loan, and unable to recoup its investors' capital from the Phipps-Debtors on this bad debt, EFOA has become desperate. To avoid revealing to its investors that EFOA has lost their money due to its greed and negligence, EFOA has demonstrated it will go to any length and stoop to any level to continue its charade, including seeking to recover its bad debt from others, even if such attempts are wholly unsubstantiated, improper, malicious, and pursued in bad faith.

Though Counterclaim-Plaintiffs have <u>no relationship</u> whatsoever with EFOA and had <u>no knowledge</u> of the Phipps-Debtors' dealings with EFOA, EFOA has used every means imaginable to improperly seize Counterclaim-Plaintiffs' assets. While EFOA's efforts have proven wholly unsuccessful (having been rebuffed in at least four Texas state court tribunals), EFOA's intentional misconduct described more fully below—including EFOA's control and weaponization of Phipps and his law firms to tortiously interfere with and cause Phipps' breach of his contractual obligations to Counterclaim-Plaintiffs—has knowingly and intentionally inflicted substantial damages upon Counterclaim-Plaintiffs. Through this Counterclaim, Counterclaim-Plaintiffs seek to hold EFOA accountable for its egregious conduct which has caused them substantial and ongoing harm.

## PARTIES

1.      Counterclaim-Plaintiff Clayton Clark is an individual residing in Harris County, Texas. Counterclaim-Plaintiff Clark, Love & Hutson, GP, is a Texas general partnership with a principal place of business in Houston, Texas. Counterclaim-Plaintiff Clark, Love & Hutson,

---

[1] When used herein, the term "Phipps-Debtors" refers to the following law firms: Martin Phipps, PLLC, Phipps Anderson Deacon LLP, Phipps LLP, J. Barrett Deacon, PLC, Simon Purnell, PLLC, and Phipps Deacon Purnell, PLLC. Martin Phipps, individually, is not a Phipps-Debtor.

2

PLLC, is a Texas professional limited liability company with a principal place of business in Houston, Texas.

2.    Counterclaim-Plaintiff Peter Flowers is an individual residing in Cook County, Illinois. Counterclaim Plaintiff Meyers & Flowers, LLC is an Illinois limited liability company with a principal place of business in St. Charles, Illinois.

3.    Martin Phipps is an individual residing in Bexar County, Texas. Martin Phipps, PLLC is a Texas professional limited liability company with its principal place of business in Bexar County, Texas. Phipps Anderson Deacon LLP is a Texas limited liability partnership with its principal place of business in Bexar County, Texas. Martin Phipps, and his law firms, Martin Phipps, PLLC and Phipps Anderson Deacon LLP, are parties to this case and have appeared herein.

4.    Intervenor and Counterclaim-Defendant EFOA is a limited liability company organized under the laws of Delaware with a principal place of business in Dania, Florida. EFOA holds itself out to the public and its investors as a national consumer finance company extending Consumer Installment Loans, however, its business dealings are much more sordid and clandestine. EFOA is not a benevolent employee lending company as its name suggests, but rather a commercial lender providing high interest loans (loans at exorbitant rates well above what any bank would charge) to vulnerable parties unable to fund their businesses, including distressed law firms (like the Phipps law firms) unable to fund their practices. EFOA has an "F" rating from the Better Business Bureau ("BBB"). In its prior filings EFOA has claimed it is the holder of a Texas lenders' license, but that fact is wholly immaterial to this case and grossly misleading because such license, at most, concerns only certain consumer lending, not EFOA's commercial lending to the Phipps-Debtors.

3

5.      All parties to this suit have appeared and are properly before this Court.

## JURISDICTION AND VENUE

6.      This court has subject matter jurisdiction over this action pursuant to applicable Texas law, including TEX. GOV'T CODE ANN. §§ 24.007(a), 24.008. The amount in controversy satisfies the jurisdictional requirements of this Court. *See* Tex. Const. art. V, § 8; *see also* TEX. GOV'T CODE ANN. § 24.007(b). Counterclaim-Plaintiffs are entitled to monetary relief against EFOA exceeding $1,000,000.00, as well as non-monetary relief.

7.      This Court has personal jurisdiction over the parties, all of which have appeared and are properly before this Court and have expressly sought affirmative relief in this proceeding. EFOA not only has a presence in and minimum contacts with Texas, EFOA's actions which form the basis of Counterclaim-Plaintiffs' claims occurred in, were directed at, and caused injuries and damages in Texas. Moreover, EFOA has consistently and purposely availed itself of this Texas forum, having pursued litigation involving the parties in no fewer than four (4) Texas state court tribunals, including filing its Petition in Intervention in this Wharton County, Texas proceeding in an effort to procure joint venture assets deposited into the qualified settlement fund ("QSF") established by this Court.

8.      Venue is proper in Wharton County including, *inter alia*, pursuant to Tex. Civ. Prac. & Rem. Code § 15.062(a). These proceedings were instituted in Wharton County in accordance with paragraph 5 of the JV Agreement. EFOA subsequently filed its Petition in Intervention in these Wharton County proceedings. Under Tex. Civ. Prac. & Rem. Code § 15.062(a), venue in Wharton County is proper as venue of the main action establishes venue over this Counterclaim.

**FACTUAL BACKGROUND**

9.     This case was instituted by the Joint Venture Partners ("JV Partners"),[2] in accordance with paragraph 5 of their November 22, 2016 Amended Joint Venture Agreement ("JV Agreement"),[3] to administer the distribution of attorneys' fees and expenses acquired by the joint venture in the multi-district litigation commonly referred to as the Syngenta Corn Litigation.[4]

10.    The joint venture was formed in the nascent stages of the Syngenta Corn Litigation. In fact, by November 22, 2016, the JV Partners had already executed the JV Agreement, a copy of which is attached hereto as Exhibit A. With its labor and assets, the joint venture created, developed, and prosecuted the Syngenta Corn Litigation in states throughout the corn belt. The joint venture, *inter alia*, maintained all client files, maintained current client lists, obtained client records, and prosecuted client claims.

11.    All funds deposited into the Qualified Settlement Fund ("QSF") established by this Court, were deposited there by the joint venture and resulted from years of painstaking effort by the joint venture, including both labor and expense, which ultimately led to the creation of a

---

[2] When used herein the term "JV Partners" refers to: Clayton Clark, acting on behalf of himself individually and on behalf of Clark, Love & Hutson, Peter Flowers, acting on behalf of himself individually and on behalf of Meyers & Flowers, and Martin Phipps, acting on behalf of himself individually and on behalf of Martin Phipps PLLC and Phipps Anderson Deacon LLP (hereinafter the "JV Partners").

[3] When used herein, the term "JV Agreement" refers to the Amended Joint Venture Agreement of the JV Partners, dated November 22, 2016, as modified by agreement of the JV Partners.

[4] The "Syngenta Corn Litigation" is a complex, multi-district litigation resulting from Syngenta's premature and negligent commercialization of its Viptera and Duracade corn seed, which corn seed contained a genetically modified event known as MIR 162, which was not approved for food or feed use in major U.S. export markets. Following the detection of MIR 162 in shipments of U.S. corn and distillers dried grains with solubles ("DDGS") to China, China and other nations closed their markets to U.S. corn and DDGS, resulting in a drastic decrease in the price of U.S. corn and DDGS. U.S. corn producers, grain handlers, and biorefineries brought suit against Syngenta to recover for injuries sustained a result of Syngenta's negligent conduct.

$1.51 billion class settlement with Syngenta on behalf of the joint venture's clients and all U.S. corn producers, grain handlers, and biorefineries. All such funds acquired by the joint venture and deposited by the joint venture into the QSF have been distributed pursuant to the terms of the JV Agreement and unanimous agreement of the JV Partners, exactly as contemplated by the MDL Court.[5]

12.    Specifically, on January 14, 2021, the QSF established by this Court received attorneys' fees and expenses disbursed to the joint venture by the MDL Court.

13.    In March 2021, the JV Partners reached unanimous agreement concerning the distribution of the attorney fees and expenses that the joint venture received from the MDL Court (the "Settlement Agreement"). The terms of the Settlement Agreement reached by the JV Partners are reflected in this Court's March 10, 2021 Order distributing the QSF ("Distribution Order"). A copy of an email from the Court's Special Master to the JV Partners referencing the Settlement Agreement and attaching a copy of the Distribution Order is attached hereto as Exhibit B. The Settlement Agreement, as reflected in the Distribution Order, confirmed the reimbursement of funds contributed by the JV Partners to the joint venture (characterized as expense reimbursements) in the amounts of $5,633,782.10 to Meyers & Flowers, $13,874,459.70 to Clark Love Hutson, and $1,000,000.00 to Phipps Anderson Deacon. The Distribution Order also made distributions of profits (characterized as common-benefit fees) in the amounts of $6,947,711.29 to Meyers & Flowers, $12,219,029.38 to Clark Love Hutson, and $2,500,000.00 to Phipps Anderson Deacon. Pursuant to the Settlement Agreement, the Court also awarded $150,000.00 to the Special Master and $350,000.00 to the Fund Administrator for services rendered.

---

[5] When used herein, the term "MDL Court" refers to the United States District Court for the District of Kansas, the Honorable John W. Lungstrum presiding.

14.     Relator subsequently filed its Petition in Intervention in this Court claiming a security interest in any funds payable to the Phipps-Debtors. Unbeknownst to CLH or M&F, on April 26, 2019, EFOA entered into a Credit Agreement with the Phipps-Debtors. EFOA's Security Agreement with the Phipps-Debtors makes plain that Relator's security interest is limited in scope to "the personal property of [the Phipps-Debtors]." It has *nothing whatsoever* to do with the property of the joint venture, Counterclaim-Plaintiffs, nor any other person—only the Phipps-Debtors. EFOA has previously admitted that the Phipps-Debtors never conveyed it a security interest in the joint venture's assets—nor could they. Thus, EFOA's sole interest in this proceeding has been limited to redirecting distributions from the joint venture payable to the Phipps-Debtors once determined and distributed by the joint venture.

15.     Despite its total awareness of the JV Partners' Settlement Agreement as reflected in the Court's Distribution Order, desperate to conceal the nature of its bad loan to the Phipps-Debtors from its investors, EFOA thereafter hatched a plan to attack and undermine the Settlement Agreement.

16.     By exerting and employing its influence and control over Phipps and his indebted law firms, EFOA intentionally, improperly, and maliciously caused Phipps to breach the Settlement Agreement. Specifically, EFOA compelled Phipps to contest, challenge, disobey, and dispute the material terms of the Settlement Agreement—despite the fact that the Settlement Agreement was certified by the JV Partners to the Court's Special Master and reflected in the Court's Distribution Order—by invoking and prosecuting arbitration and Phipps' subsequent words and deeds.

17.     On August 3, 2021, at EFOA's insistence and compulsion, Phipps sent notice to the other JV Partners invoking arbitration and thereafter disputed the terms of the Settlement

Agreement both in arbitration and without. At EFOA's direction and insistence, Phipps further specifically refused to adhere to the terms of the Settlement Agreement. These breaches of the Settlement Agreement by Phipps were instigated and accomplished at the direction of EFOA. EFOA's blatant and improper interference with the Settlement Agreement has caused Counterclaim-Plaintiffs substantial damages including substantial business disruption, loss of income, and the payment of otherwise unnecessary attorneys' fees, costs, and other expenses, including to resolve a dispute that had previously been settled by agreement of the JV Partners.

18.     On October 13, 2021, upon Phipps and EFOA's insistence, a Final Binding Arbitration hearing was conducted. Thereafter, on December 20, 2021 the Arbitration Panel issued its Final Binding Arbitration Award in favor of Counterclaim-Plaintiffs and against Phipps. The Arbitration Panel held, *inter alia*, that Phipps breached his contractual and fiduciary duties to the joint venture and the Counterclaim-Plaintiffs and defrauded the joint venture and Counterclaim-Plaintiffs. A copy of the Arbitration Panel's December 20, 2021 Clarified/Amended Final Binding Arbitration Award is attached hereto as Exhibit C.

19.     But even the Arbitration Panel's issuance of the Final Binding Arbitration Award in favor of Counterclaim-Plaintiffs against Phipps would not satiate EFOA.

20.     EFOA thereafter insisted that Phipps challenge and contest confirmation of the Final Binding Arbitration Award despite the clear and unequivocal terms of the JV Partners' Binding Arbitration Agreement dated October 11, 2021, which stated:

> On completion of the final hearing and receipt of any other documents or briefs, the Arbitration Panel will issue an arbitration award in writing and deliver a copy of the award to each party or the party's attorney by e-mail after the completion of the hearing and receipt of any briefs or as otherwise established by agreement of the parties and the Arbitration Panel. *At such time, the parties hereto consent, in advance, to the entry of an agreed judgment that accurately reflects the award of the Arbitration Panel.*

8

Binding Arbitration Agreement, ¶7 (emphasis added). A copy of the Binding Arbitration Agreement is attached hereto as Exhibit D.

21.    Under EFOA's direction and control and upon its insistence, Phipps frivolously denied having an arbitration at all and expressly challenged confirmation of the Arbitration Award in subsequent legal proceedings in Travis County District Court thereby breaching the terms of the Binding Arbitration Agreement.

22.    Once again EFOA's efforts have proven futile.

23.    On June 30, 2023, the Travis County District Court entered its Final Judgment confirming the Arbitration Award and rejecting all challenges thereto.

24.    Through its conduct described herein, EFOA has demonstrated its total disregard for the rights and contracts of others. It has demonstrated its willingness to use its power and control over Phipps and his law firms to flaunt the JV Partners' agreements including the Settlement Agreement, Binding Arbitration Agreement, and also the JV Agreement itself.

25.    Indeed, at all times relevant hereto, the JV Agreement required the JV Partners to act as fiduciaries of the joint venture and to act with the utmost good faith and fair dealing. Due to EFOA's conduct described herein, Phipps has breached that obligation. The JV Agreement prevents third-parties from meddling in the affairs of the joint venture, which provision Phipps has breached by EFOA's conduct described herein. Like the Binding Arbitration Agreement, the JV Agreement provides that in the event of arbitration, the arbitrators will "make their decision and their decision shall be final and binding on the parties and not subject to any appeal including to any QSF Court or Judge;" yet Phipps, at EFOA's direction has done just that in obvious breach of the JV Agreement.

9

26.     EFOA has invested millions of dollars attempting to seize for itself assets belonging to the Counterclaim-Plaintiffs. It has done so, among other means, by causing Phipps to breach its contractual obligations to the JV Partners without justification. EFOA's conduct has caused Counterclaim-Plaintiffs to suffer substantial damages including substantial business disruption, loss of income, and the payment of otherwise unnecessary attorneys' fees, costs, and other expenses. EFOA should be held liable for its improper conduct which has unnecessarily harmed Counterclaim-Plaintiffs.

## CAUSES OF ACTION

### COUNT I
### TORTIOUS INTERFERENCE WITH A CONTRACT
### (THE JV PARTNERS' SETTLEMENT AGREEMENT)

27.     Plaintiffs restate the allegations above as if fully rewritten herein.

28.     The JV Partners, including Counterclaim-Plaintiffs and Phipps, are parties to the Settlement Agreement, a contract.

29.     EFOA had full knowledge and awareness of the existence of the Settlement Agreement entered into by the JV Partners.

30.     Unsatisfied with the terms of the Settlement Agreement, EFOA knowingly, willfully, and intentionally interfered with the JV Partners' contractual agreement.

31.     Improperly exercising its dominion and control over Phipps, EFOA caused Phipps and his law firms to breach the material terms of the Settlement Agreement.

32.     On August 3, 2021, under EFOA's improper compulsion, Phipps invoked binding arbitration to set at naught the terms of the Settlement Agreement and thereafter wholly refused to abide by the terms of the Settlement Agreement as described herein.

10

33.    EFOA's conduct, which largely deprived Counterclaim-Plaintiffs of the benefit of their Settlement Agreement bargain, demonstrates a willful and intentional act of interference with the Settlement Agreement.

34.    EFOA's malicious conduct described herein has directly and proximately caused injury to Counterclaim-Plaintiffs.

35.    As a direct and proximate result of EFOA's improper conduct, Counterclaim-Plaintiffs have suffered substantial damages including substantial business disruption, loss of income, and the payment of otherwise unnecessary attorneys' fees, costs, and other expenses.

36.    But for EFOA's conduct, Counterclaim-Plaintiffs would not have suffered these damages.

37.    WHEREFORE, Counterclaim-Plaintiffs demand judgment against EFOA and request compensatory damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

**COUNT II**
**TORTIOUS INTERFERENCE WITH A CONTRACT**
**(THE JV PARTNERS' BINDING ARBITRATION AGREEMENT)**

38.    Plaintiffs restate the allegations above as if fully rewritten herein.

39.    The JV Partners, including Counterclaim-Plaintiffs and Phipps, are parties to the Binding Arbitration Agreement, a contract.

40.    At all times relevant hereto EFOA had full knowledge and awareness of the existence of the Binding Arbitration Agreement entered into by the JV Partners.

41.    Through its conduct described herein, EFOA knowingly, willfully, and intentionally interfered with the JV Partners' contractual agreement.

11

42.     Improperly exercising its dominion and control over Phipps, EFOA caused Phipps and his law firms to breach the material terms of the Settlement Agreement. Specifically, being unsatisfied with the Final Binding Arbitration Award entered by the Arbitration Panel, EFOA caused Phipps and his law firms to contest confirmation of the Arbitration Award despite expressly agreeing they would not.

43.     EFOA's conduct demonstrates a willful and intentional act of interference with the Binding Arbitration Agreement.

44.     EFOA's malicious conduct described herein has directly and proximately caused injury to Counterclaim-Plaintiffs.

45.     As a direct and proximate result of EFOA's improper conduct, Counterclaim-Plaintiffs have suffered damages including substantial business disruption, loss of income, and the payment of otherwise unnecessary attorneys' fees, costs, and other expenses.

46.     But for EFOA's conduct, Counterclaim-Plaintiffs would not have suffered these damages.

47.     WHEREFORE, Counterclaim-Plaintiffs demand judgment against EFOA and request compensatory damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

**COUNT III**
**TORTIOUS INTERFERENCE WITH A CONTRACT**
**(THE JV PARTNERS' JV AGREEMENT)**

48.     Plaintiffs restate the allegations above as if fully rewritten herein.

49.     The JV Partners, including Counterclaim-Plaintiffs and Phipps, are parties to the JV Agreement, a contract.

50.     At all times relevant hereto EFOA had full knowledge and awareness of the existence of the JV Agreement entered into by the JV Partners.

51.     Since August 3, 2021, through its conduct described herein, EFOA knowingly, willfully, and intentionally interfered with the JV Partners' JV Agreement.

52.     At all times relevant hereto, the JV Agreement required the JV Partners to act as fiduciaries of the joint venture and to act with the utmost good faith and fair dealing. Due to EFOA's conduct described herein, Phipps has breached that obligation.

53.     At all times relevant hereto, the JV Agreement prevented third-parties from meddling in the affairs of the joint venture, which provision Phipps has breached by EFOA's conduct described herein.

54.     Like the Binding Arbitration Agreement, paragraph 12 of the JV Agreement also provides that in the event of arbitration, the arbitrators will "make their decision and their decision shall be final and binding on the parties and not subject to any appeal including to any QSF Court or Judge." Yet Phipps, at EFOA's direction, has done just that in obvious breach of the JV Agreement.

55.     Improperly exercising its dominion and control over Phipps, EFOA has caused Phipps and his law firms to breach the material terms of the JV Agreement.

56.     EFOA's conduct demonstrates a willful and intentional act of interference with the JV Agreement.

57.     EFOA's malicious conduct described herein has directly and proximately caused injury to Counterclaim-Plaintiffs.

58.    As a direct and proximate result of EFOA's improper conduct, Counterclaim-Plaintiffs have suffered damages including substantial business disruption, loss of income, and the payment of otherwise unnecessary attorneys' fees, costs, and other expenses.

59.    But for EFOA's conduct, Counterclaim-Plaintiffs would not have suffered these damages.

60.    WHEREFORE, Counterclaim-Plaintiffs demand judgment against EFOA and request compensatory damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such other relief as the Court deems equitable and just.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Counterclaim-Plaintiffs pray that the Court enter judgment in their favor and against EFOA on all causes of action asserted herein, that Counterclaim-Plaintiffs recover from EFOA all compensatory damages, punitive or exemplary damages, and applicable statutory and civil penalties allowed by law, and further that Counterclaim-Plaintiffs be awarded their attorneys' fees through trial and appeal, costs of court and expenses, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Counterclaim-Plaintiffs may show themselves to be justly entitled.

Dated: July 18, 2023

Respectfully submitted,

*/s/ Clayton A. Clark*
Clayton A. Clark
Texas Bar No. 04275750
W. Michael Moreland
Texas Bar No. 24051080
Jason M. Milne
Texas Bar No. 24109314
**CLARK, LOVE & HUTSON, GP**
400 Louisiana St., Ste. 1700
Houston, Texas 77002
Telephone:  713-757-1400
cclark@triallawfirm.com
mmoreland@triallawfirm.com
jmilne@triallawfirm.com

Peter J. Flowers
Michael W. Lenert
**MEYERS & FLOWERS, LLC**
3 North Second St., Ste. 300
Charles, IL  60174
Telephone:
pjf@meyers-flowers.com
mwl@meyers-flowers.com

***Counsel for Counter-Claim Plaintiffs***

15

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of July 2023, in accordance with the Texas Rules of Civil Procedure, a true and correct copy of the foregoing document was served by electronic mail upon the following:

Robert S. Harrell
Kathryne M. Gray
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
Tel: 713-238-2700
rharrell@mayerbrown.com
kgray@mayerbrown.com

Randy E. Moore
THE MOORE LAW FIRM
#7 West Way Court, Suite C
Lake Jackson, Texas 77566
Tel: 979-285-2230
rmoore@moore-law.us

*Attorneys for Intervenor & CounterClaim-Defendant Employee Funding of America, LLC*

Scott H. Freeman
ARCHER SYSTEMS, LLC
1775 St. James Place, Ste. 200
Houston, Texas 77056
Tel: 713-322-8111
sfreeman@archersystems.com

*Fund Administrator*

Gregory L. Gowan
Gowan & Elizondo LLP
555 North Carancahua, Ste. 1400
Corpus Christi, Texas 78401
Tel: 361-651-1000
ggowan@gelawfirm.com

*Special Master*

Martin Phipps
Meagan Talafuse
PHIPPS ORTIZ TALAFUSE, PLLC
102 9th St.
San Antonio, Texas 78215
Tel: 210-340-9877
mphipps@phippsortiztalafuse.com
mtalafuse@phippsortiztalafuse.com

*Counsel for Martin Phipps, Martin Phipps, PLLC, and Phipps Anderson Deacon LLP*

*/s/ Clayton A. Clark*
Clayton A. Clark

16